UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON, | No. 2:16-cv-00267-TLN-JDP |
| Plaintiff, | |
| v. | **ORDER** |
| ALI ALJABRI, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiff Scott Johnson's ("Plaintiff") Motion for Summary Judgment. (ECF No. 33.) Defendant Ali Aljabri ("Defendant") filed an opposition.[1] (ECF No. 40.) Plaintiff filed a reply. (ECF No. 42.) For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment. (ECF No. 33.)

///
///
///
///
///
///

---

[1] Defendant Ebrahim Fadhel ("Fadhel") is also named as a Defendant in the instant action, but does not join in this opposition nor did he file an opposition to the instant motion.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a quadriplegic who requires a wheelchair for mobility and who suffers from manual dexterity impairments. (Plaintiff's Material Facts ("PMF"), ECF No. 33-3 ¶ 2.) On February 24, 2014, Plaintiff went to the New Country Market (the "Market") located at 3020 N. Wilson Way, Stockton, California to shop. (*Id.* at ¶¶ 2, 6.) In 2014, Aljabri and Fadhel owned the property on which the Market is located.[2] (*Id.* at ¶ 3; Def.'s Response ("DR"), ECF No. 40 ¶ 3.) While at the Market, Plaintiff could not find a lowered sales counter to make his purchase. (PMF ¶ 7; DR ¶ 7.) The counter was crowded with displays and merchandise, which prevented Plaintiff from making a purchase. (PMF ¶¶ 8, 9; DR ¶¶ 8, 9.) Plaintiff returned to the Market in August, September, and October of 2014 and found the counter in the same condition.[3] (PMF ¶¶ 10, 11; DR ¶¶ 10, 11.) The higher counter creates difficulty and discomfort for Plaintiff. (PMF ¶ 12; DR ¶ 12.) Plaintiff hired an investigator who visited the Market and found the transaction counter was 43 inches in height, without a lowered portion at 36 inches. (PMF ¶¶ 13–15; DR ¶¶ 13–15.) Plaintiff lives an hour from Stockton and frequents the area on various occasions. (PMF ¶ 16; DR ¶ 16.) Plaintiff is deterred from visiting the Market until there is a lowered transaction counter. (PMF ¶¶ 17, 18; DR ¶¶ 17, 18.) Plaintiff will return to the Market to assess compliance with disability access laws after these barriers have been removed. (PMF ¶ 19; DR ¶ 19.)

Plaintiff filed the operative Complaint on February 10, 2016, claiming entitlement to damages and injunctive relief for violations of (1) the federal Americans with Disabilities Act ("ADA") and (2) the California Unruh Civil Rights Act ("Unruh Act"). (ECF No. 1.) Plaintiff moved for summary judgment on January 9, 2020. (ECF No. 33.) Defendant opposed the motion on April 2, 2020. (ECF No. 40.) Plaintiff replied on April 9, 2020. (ECF No. 42.)

---

[2] Defendant disputes this fact. (DR ¶ 3.) Defendant claims he bought the property from Fadhel in 2012 and has been the sole owner since then. (ECF No. 40-3 at 2.)

[3] Defendant disputes many of Plaintiff's facts (PMF ¶¶ 7–9, 12, 14–15, 17–19) on the same basis. (DR ¶ 7–9, 12, 14–15, 17–19.) Defendant argues he hired a Certified Access Specialist ("CASp") Inspector to perform an inspection in 2011. (ECF No. 40-3 at 2.) After receiving the inspection report, Defendant claims to have made alterations to the property to comply with the report and constructed the transaction counter to be 36 inches above the ground and 38 inches wide. (*Id.*)

**II.     STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III.   ANALYSIS

Plaintiff moves for summary judgment as to both of his claims. The Court will first analyze the ADA claim and then the Unruh Act claim.[4]

#### A.   Claim One: ADA Claim

"To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins*

---

[4] Plaintiff also makes arguments about injunctive relief and statutory penalties. (ECF No. 33-1 at 13–15.) Because the Court finds there is a genuine dispute of material fact and denies the motion, it need not and does not address these arguments.

*Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010); *see also* 42 U.S.C. § 12182(a) (setting forth the ADA's general rule).

### i. Plaintiff's Disability

Satisfying the first element of an ADA disability discrimination claim requires proof that a plaintiff suffers from "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102. Walking is one of the major life activities defined by the ADA. *Id.* Here, the evidence is uncontroverted that Plaintiff is disabled within the meaning of the ADA because he is a quadriplegic who cannot engage in the major life activity of walking. (PMF ¶ 1; DR ¶ 1.) Accordingly, Plaintiff has established that "he is disabled within the meaning of the ADA." *Arizona ex rel. Goddard*, 603 F.3d at 670.

### ii. Ownership of Place of Public Accommodation

Plaintiff argues "[s]ales establishments are expressly identified under the ADA as places of public accommodation" and the Market is such a sales establishment.[5] (ECF No. 33-1 at 11.) In opposition, Defendant does not dispute that the Market is a place of public accommodation. (*See* ECF No. 40-2.) The second element of an ADA disability discrimination claim is met if the defendant is a "sales or rental establishment" because such an establishment qualifies as a public accommodation subject to the ADA. 41 U.S.C. § 12181. Because the Market is a sales establishment (PMF ¶ 5), it qualifies as a public accommodation under the ADA. *See* 42 U.S.C. § 12181; *Arizona ex rel. Goddard*, 603 F.3d at 670 (requiring proof for ADA claims that "the defendant is a private entity that owns, leases, or operates a place of public accommodation").

### iii. Denial of Public Accommodation Due to Disability

Plaintiff argues he was denied access to a public accommodation due to the lack of an accessible transaction counter. (ECF No. 33-1 at 12.) Plaintiff asserts the 2010 Standards of the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") state a transaction

---

[5] Plaintiff claims "Defendants [Aljabri and Fadhel] owned the Market and real property where the place of public accommodation is located." (ECF No. 33-1 at 11; ECF No. 33-3 at 2.) Defendant disputes that he and Fadhel were the owners in 2014. (DR ¶ 3.) Aljabri declares that from 2003 to 2012, he operated the Market and in 2012, he purchased the property from Fadhel and is the sole owner. (ECF No. 40-3 at 2.) The Court finds this is not a dispute as to a material fact as Defendant does not dispute that the market is a place of public accommodation.

counter must be "no higher than 36 inches above the floor and 36 inches in width . . . ." (*Id.*) However, Plaintiff contends Defendant's counter is 43 inches high. (*Id.*)

In opposition, Defendant argues "there was a readily accessible counter immediately adjacent to the non-accessible counter that was 36-inches in height and 36-inches long." (ECF No. 40-2 at 4; *see also* ECF No. 40-3 at 5–7.) Defendant argues his 2011 CASp inspection and subsequent counter renovation complies with the 2002 ADAAG and the 1991 Standards for Accessible Design ("ADAS"). (ECF No. 40-2 at 6.) Defendant argues the "safe harbor" provision of the ADA protects him from needing to further renovate the Market because he complied with the 1991 Standards. (*Id.* at 7–8.)

In reply, Plaintiff maintains "Defendant's sales counter does not comply with either of the [1991 or 2010] accessibility standards." (ECF No. 42 at 2–9.) Plaintiff also notes Defendant "does not provide any photographs or evidence demonstrating the current condition of the counter." (*Id.* at 6.)

"The 1991 Standards apply to construction completed before March 15, 2012, while the 2010 Standards apply to construction or alterations after that date." *Johnson v. Monterey & Rancho Plaza*, No. 18-CV-05718-BLF, 2020 WL 5893319, at *5 (N.D. Cal. Oct. 5, 2020) (citing *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *7 (N.D. Cal. May 18, 2018) ("Alterations to facilities undertaken after March 15, 2012 must comply with the 2010 Standards." (citing 28 C.F.R. § 35.151(c)(5)(i))).

The 1991 Standards state:

> In department stores and miscellaneous retail stores where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 in (915mm) in length with a maximum height of 36 in (915 mm) above the finish floor.

U.S. Dep't of Justice, ADA Standards for Accessible Design, § 7.2(1) (rev. Jul. 1, 1994), available at https://www.ada.gov/1991standards/adastd94-archive.pdf. The 2010 Standards state that "[s]ales counters and service counters shall comply with [§§] 904.4.1 or 904.4.2. The *accessible* portion of the counter top shall extend the same depth as the sales or service counter

6

top." U.S. Dep't of Justice, 2010 ADA Standards for Accessible Design, § 904.4 (Sept. 15, 2010), available at https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf. Section 904.4.1 sets for the "Parallel Approach," in which "[a] portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided. A clear floor or ground *space* complying with [§] 305 shall be positioned for a parallel approach adjacent to the 36 inch (915 mm) minimum length of the counter."[6] *Id*. § 904.4.1.

Here, the Court finds that it is irrelevant to decide whether the 1991 Standards or the 2010 Standards apply, as the parties do not clearly establish the height of the counter. Defendant has provided photographs of a counter with red lettering and an accessibility sign that demonstrates the counter is 36 inches in height. (ECF No. 40-3 at 5–7.) There is a photograph of part of the counter indicating that it is 38 inches long, but there is no full-size picture to confirm that the counter is measured correctly. (*Id.* at 7.) Defendant avers in his declaration that the photographs were "taken of the transaction counter after the alteration was made in 2011." (*Id.* at 2.) Plaintiff visited the Market on April 2, 2014, August 25, 2014, September 2, 2014, September 4, 2014, and October 10, 2014, and took photographs of a different-looking counter with what appears to be a Budweiser sign. (ECF No. 33-3 ¶¶ 10, 11.) Plaintiff states this counter was in the same condition each time. (*Id.*) However, Plaintiff's photographs fail to show the counter is non-compliant because there is no measurement of the counter. (*See* ECF No. 33-6.) Plaintiff has also provided photographs taken by Tyler C. Anderson, "an investigator hired by the Center for Disability Access," that demonstrate this same counter is 43 inches in height (ECF No. 33-9 at 1–3; ECF No. 33-8 at 1–2.) A declaration submitted by Anderson states that he took these photographs on a visit to the Market on February 1, 2016. (ECF No. 33-8 at 1–2.) Defendant offered no evidentiary objections to these photographs.

The Court finds the photographs provided by the parties do not clearly establish whether the counter is 36 inches or 43 inches high. The Court accordingly finds that there is a genuine

---

[6] Plaintiff identifies the "Parallel Approach" as applicable in the instant matter. (ECF No. 33-1 at 12.)

7

1  dispute of fact as to the height of the counter in the Market. *See Schroeder v. Woo*, No. 2:13-CV-
2  01964-GEB-CKD, 2015 WL 4092876, at *1 (E.D. Cal. July 6, 2015) (denying the plaintiff's
3  summary judgment motion because photographs lacking measurement of check-out counter's
4  length were insufficient to show "no genuine dispute" as to the counter's compliance with the
5  ADA and Unruh Act). This factual dispute is material to Plaintiff's claim. *See Lammey v. Bang*
6  *Ja Kim*, No. 2:18-cv-09751 SJO (AGRx), 2020 WL 2082947, at *4 (C.D. Cal. Feb. 28, 2020)
7  (denying summary judgment when there was a genuine dispute of material fact in relation to
8  counter height). Accordingly, the Court DENIES Plaintiff's motion as to the ADA claim.

          B.     Claim Two: Unruh Act

10     Any "violation of the right of any individual under the [ADA] shall also constitute a
11 violation of" the Unruh Act. Cal. Civ. Code § 51(f); *Lentini v. Cal. Ctr. for the Arts, Escondido*,
12 370 F.3d 837, 847 (9th Cir. 2004).

13     Plaintiff does not allege a violation of the Unruh Act independent of his claims under the
14 ADA. (ECF No. 33-1 at 13.) For the reasons provided above, therefore, Plaintiff's ADA
15 violations are insufficient to support summary judgment on this claim as well. *See Johnson v.*
16 *Starbucks Corp.*, No. 2:18-cv-01886 WBS EFB, 2020 WL 4042965, at *4 (E.D. Cal. July 17,
17 2020) (finding that as the "[p]laintiff does not allege a violation of the Unruh Act independent of
18 his claims under the ADA," the "plaintiff cannot rely on his alleged ADA violations to support
19 summary judgment on his Unruh Act claim"). Accordingly, the Court DENIES Plaintiff's motion
20 as to the Unruh Act.

21           **IV.**     **CONCLUSION**

22     For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Summary
23 Judgment. (ECF No. 33.) The parties are hereby ordered to file a Joint Notice of Trial Readiness
24 within thirty (30) days of the electronic filing date of this Order indicating their readiness to
25 proceed to trial and proposing trial dates.
26 //
27 //
28 //

IT IS SO ORDERED.

**DATED:** March 29, 2022

Troy L. Nunley
United States District Judge

9